IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ROBERT A. PORTELL, | ) |
| Plaintiff, | ) ) ) ) ) |
| vs. | ) Case No. 07-0269-CV-W-ODS |
| AMERICOLD LOGISTICS, LLC, | ) ) ) ) |
| Defendant. | ) |

<u>ORDER AND OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DIRECTING PARTIES TO FILE SUPPLEMENTAL BRIEFS</u>

    This case involves a claim for breach of contract. Plaintiff and Defendant entered a contract on June 8, 1998, setting forth the terms of Plaintiff's employment. The contract had a term of one year, but it automatically renewed each year unless one of the parties provided written notice of non-renewal at least ninety days before the renewal would be effective. Apart from nonrenewal, the contract contemplated Plaintiff's employment could end with one of four types of termination: termination due to Plaintiff's death, termination due to Plaintiff's disability, termination for cause, and termination without cause. In the event of termination without cause, Plaintiff would be entitled to a severance package (including health benefits) described in the contract. On July 24, 1998, the parties executed an addendum to the contract. As relevant to these proceedings, the addendum declares that "[t]he non-renewal of this Agreement, following the good faith negotiations of both parties hereto, shall constitute a Termination Without Cause . . . ."

    The contract was renewed annually, the last time on June 8, 2005. On March 3, 2006, Defendant sent Plaintiff a letter advising it did not want to renew the contract. The letter continued by stating Defendant "does not intend to terminate your employment as a result of this non-renewal. You will continue your employment after the non-renewal date and you will become subject to the then current terms and

conditions of employment for all exempt managerial employees."[1]  Plaintiff testified that on March 9, he contacted Kathy Dodd (Defendant's Vice President of HR Services) and told her he "felt this was canceling a contract . . . and that I was due compensation that [is] stated in the contract."  He testified affirmatively when asked if he specifically asked for his severance pay.  Plaintiff's Dep. at 96.  Dodd disagreed with Plaintiff's interpretations of the contract, and Plaintiff faxed a copy of the contract to her.  Plaintiff's Dep. at 97.  Within a few weeks, Defendant sent Plaintiff a letter purporting to revoke the written notice of non-renewal and declaring that Plaintiff's "employment will continue under the contract until further notice."

On May 8, 2006, Plaintiff's attorney sent Defendant a letter expressing the belief that Defendant's March 9 letter effectively prevented the contract's renewal and that Plaintiff's employment would end on June 8.  The letter concluded by declaring that "[u]nless we hear from you within 10 days of the date of this letter, we will consider Mr. Portell's contract terminated as of the stated date of June 8, 2006."  Defendant responded a week later, expressing the view that the notice of non-renewal had been revoked and Plaintiff could not resign and claim severance benefits.  The letter concluded by stating Plaintiff "remains employed by AmeriCold under his employment agreement and his job is not being terminated at this time."  Plaintiff stopped working and now alleges Defendant terminated the agreement and asserts a claim for the severance benefits due.

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986).  "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and

---

[1] The letter indicated the contract would become "void and invalid" on June 8, 2009.  Defendant sent a clarify letter on March 9, 2006, acknowledging the typographical error and indicating the contract would end on June 8, 2006.  The second letter was sent more than ninety days before the automatic renewal, so there is no issue about its timeliness.

2

which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The Court concludes there are disputed issues of fact regarding what Plaintiff told Dodd during their phone conversation. There are also some legal issues that have not been adequately addressed; the resolution of these issues may make Plaintiff's oral statements irrelevant, and may also dictate the outcome of this case.

For ease of discussion, the Court will first address Plaintiff's claims premised on theories of anticipatory breach, also known as anticipatory repudiation. "Anticipatory repudiation occurs when a party to a contract repudiates that contract by manifesting, by words or conduct a positive intention not to perform." JAS Apartments, Inc. v. Naji, 230 S.W.3d 354, 362 (Mo. Ct. App. 2007) (quotation omitted). "The party injured by an anticipatory breach has an election to accept or reject the refusal of performance. For the doctrine of breach by anticipatory repudiation to be applied, he or she must treat the repudiation as a breach. That is, he or she must accept and act on it. Moreover, he or she must also act promptly and within a reasonable time." Jetz Serv. Co. v. Botros, 91 S.W.3d 157, 163 (Mo. Ct. App. 2002). However, a repudiation can be cured; for instance, if the repudiating party continues to perform on the contract, the repudiation has been retracted. Id. at 164. A claim for anticipatory breach is also defeated "if the repudiation of the contract is withdrawn before the injured party brings his action or otherwise materially changes his position, and a repudiation may be retracted by the repudiator prior to the time for performance or prior to a detrimental change of position

3

by the other party in reliance on the repudiation."  Carr v. Carr, 751 S.W.2d 781, 788 (Mo. Ct. App. 1988).

Plaintiff posits several "acts of repudiation."  First, he contends the letters advising the contract would not be renewed constituted a repudiation of the contract. However, the contract specifically contemplated that a party might chose not to renew the contract and specified the manner in which that option could be exercised. Exercising the option to not renew the contract was not a breach, so nothing Defendant did to exercise that option could be construed as an anticipatory breach.  At best, these actions constitute an "anticipatory termination under the terms of the contract," but this is not a cause of action.  Plaintiff also suggests Defendant repudiated the contract by issuing a memo indicating three managers would be asked to work at facilities in California and Georgia for two week intervals because Plaintiff was supposed to work at Defendant's facility in Missouri.  Plaintiff's premise is unsound: his employment contract does not specify he would work only in Missouri, so directing him to work in another state for two weeks would not be a breach.  Moreover, even if it would have been a breach, the memo does not indicate Plaintiff would be asked to go to California or Georgia, so he could not reasonably anticipate the purported breach.

Having disposed of Plaintiff's claims of anticipatory breach, the Court is left with Plaintiff's most straightforward claim: that Defendant terminated him without cause by declining to renew the contract, thereby triggering the obligation to pay the severance package.  The Court starts with the observation that Defendant's March 3 letter constituted a termination without cause under the contract.  The addendum clearly states that a termination without cause occurs if the contract is not renewed following good faith negotiations.  Defendant's contention that it was not terminating Plaintiff's employment is thus irrelevant; the triggering event was the non-renewal of the contract. Defendant also contends Plaintiff did not engage in good-faith negotiations, which is true – but only because Defendant did not negotiate.  Defendant suggests the clause gives Plaintiff a condition right to receive severance benefits that Defendant can unilaterally defeat simply by denying him the opportunity to satisfy the condition.  This is an untenable interpretation of the contract.

4

Weere this the end of the facts, the case would be over. However, two subsequent events give the Court pause. First, Plaintiff purportedly "accepted" the nonrenewal in his phone conversation with Dodd. Second, Defendant purportedly "withdrew" its notice of non-renewal. These actions present issues that have not been fully addressed by the parties.

1. Once delivered, could Defendant "withdraw" its notice of non-renewal? As stated earlier, this act was not an anticipatory breach, so the cases cited above addressing "curing" or "withdrawing" a repudiation do not apply. The contract does not indicate the notice can be withdrawn, but neither does it forbid it.

2. If the notice can be withdrawn, is there a time limit for doing so? The contract is renewed unless notice is given at least ninety days before the anniversary date, undoubtedly so the notice's recipient has sufficient time to make any plans deemed necessary. Logic may dictate that the same deadline apply to any cancellations or withdrawals of a notice. It may also be that some other time limit (based on reliance, changed position, or the like) should apply.

3. Assuming a factfinder (the Court in this case) concludes Plaintiff "accepted" the non-renewal during his phone conversation with Dodd, did this bar Defendant from withdrawing the notice? Is the answer to this question altered by the fact that the purported "acceptance of the notice" was oral and not written, given that the contract required the notice to be in writing? Defendant posits this act had no effect because Plaintiff's position had not changed in reliance on the notice, but this is based on cases involving anticipatory breach which, as noted above, do not apply here.

The answers to these questions are to be found in the parties' contract and the common law. The parties have touched on some of these issues, but not sufficiently to allow a decision. Accordingly, the parties are to file simultaneous briefs addressing these issues on or before April 11, 2008. Simultaneous responses shall be filed on or before April 25, 2008. In addition, the pretrial conference and trial are continued pending further order of the Court. This action is taken not only to afford the parties sufficient time to address the aforementioned issues, but also because a capital trial has

5

Case 4:07-cv-00269-ODS   Document 28   Filed 03/14/08   Page 5 of 6

been scheduled during the times previously set for this case, necessitating a change in any event.

IT IS SO ORDERED.

DATE: March 14, 2008

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT