IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ROBERT A. PORTELL, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 07-0269-CV-W-ODS |
| AMERICOLD LOGISTICS, LLC, | ) |
| Defendant. | ) |

ORDER AND OPINION GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On March 14, 2008, the Court denied Defendant's Motion for Summary Judgment and directed the parties to address some additional issues. After reviewing the supplemental briefs, the Court (on May 23) resolved the outstanding legal issues and essentially concluded Plaintiff was entitled to judgment as a matter of law and invited Plaintiff to file a summary judgment motion. Plaintiff has acted on the Court's invitation and the parties agree that if Defendant is liable to Plaintiff, the actual damages would be $111,566.90. The only issues in dispute are (1) Defendant's request that the Court reconsider its May 23 Order and (2) Plaintiff's entitlement to prejudgment interest. The Court resolves these issues in Plaintiff's favor and grants Plaintiff's motion (Doc. # 39).

In summary, the May 23 Order observed the parties entered a contract with a one year term that renewed automatically each year unless one of the parties provided written notice of non-renewal at least ninety days before the end of the term. In the event of termination without cause, Plaintiff was entitled to a severance package described in the contract. The parties further agreed that non-renewal constituted a termination without cause.

The contract was last renewed on June 8, 2005. On March 3, 2006, Defendant sent Plaintiff a letter advising it did not want to renew the contract. Plaintiff contacted Kathy Dodd (Defendant's Vice President of HR Services) and told her he "felt this was canceling a contract . . . and that I was due compensation that [is] stated in the

contract." Within a few weeks, Defendant sent Plaintiff a letter purporting to revoke the written notice of non-renewal and declaring that Plaintiff's "employment will continue under the contract until further notice." Plaintiff stopped working when the contract term ended, and in this lawsuit asserts a claim for the severance benefits.

The primary issue resolved in the May 23 Order was the legal effect of Defendant's purported withdrawal of the non-renewal letter. The Court held "if Defendant was empowered to withdraw its notice of non-renewal, it had to do so prior to ninety days prior to the contract's expiration" because the parties agreed the contract would renew automatically unless the notice of non-renewal was issued at least ninety days before the anniversary date. As the Court explained,

> [t]he purpose for the ninety day period is clear: it allows a party to know the other's intentions with sufficient time to make appropriate plans. Having bargained for ninety days of knowledge, the parties are entitled to rely on the statements (if any) made more than ninety days before the contract's anniversary date. If Defendant had not delivered a notice of non-renewal at least ninety days prior, Plaintiff would have been entitled to rely on the absence of notice as an indication that the contract was renewed, and Defendant could not deliver the notice later than ninety days and expect it to be effective. Similarly, by delivering its notice in a timely fashion, Defendant provided Plaintiff with his bargained-for period of notice, and Defendant cannot deprive Plaintiff of this benefit by "revoking" its notice within the ninety day period.

To put matters more bluntly: the event or condition necessary to terminate the contract – delivery of the notice of non-renewal – occurred within the specified time period. Absent an ability to travel in time, the only way Defendant could "undo" delivery of the notice outside the ninety day period was to cancel it before the renewal date drew closer than ninety days. Defendant insists Plaintiff did not rely on the notice to change his position. The contract requires no such reliance, and the absence of reliance does not change the fact that (1) the event necessary to terminate the contract occurred and (2) nothing Defendant did or could do "undid" the occurrence of that event within the time period specified in the contract.

2

The issue of prejudgment interest is governed by statute. Section 408.020 of the Revised Missouri Statutes declares that "[c]reditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and accounts after they become due and demand of payment is made . . . ." Plaintiff demanded payment on two occasions. The first occurred in March 2006 – but the money was not due and payable at that time, and was not due and payable until the contract term ended on June 8, 2006. The filing of this lawsuit constituted the second demand for payment. See Nangle v. Brockman, 972 S.2d 545, 550 (Mo. Ct. App. 1988). Defendant argues the first demand was ineffective because it was made before the debt was due, but the statute does not contain such a requirement. The statute only says the interest will begin to accumulate after the amount is due and demanded, but does not say those two events have to occur in any particular order. Admittedly, in the normal course of events a creditor demands payment after it is due, but this is a somewhat unusual situation. Here, Defendant took steps to trigger the eventual termination of the contract, and before the actual termination occurred Plaintiff demanded payment of sums due at the contract's termination. This was the functional equivalent of Plaintiff making a demand the moment after the contract ended, and Defendant has not been deprived of any information or notice it was due under the statute. Keeping in mind that "[t]he courts may also consider equitable principles of fairness and justice when awarding prejudgment interest," Catron v. Columbia Mut. Ins. Co., 723 S.W.2d 5, 7 (Mo. 1987) (en banc), the Court concludes the circumstances are within the statute's ambit and prejudgment interest should be awarded commencing June 8, 2006.

Summary judgment is awarded in Plaintiff's favor in the amount of $111,566.90, plus prejudgment interest form June 8, 2006, through the date of this judgment in the amount of $21,237.46, for a total judgment of $132,804.36.
IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: July 31, 2008     UNITED STATES DISTRICT COURT